IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VINEYARD WIND 1 LLC, )<br>    *Plaintiff*, )<br>v. )<br>  )<br>UNITED STATES DEPARTMENT OF THE )<br>INTERIOR ; BUREAU OF OCEAN )<br>ENERGY MANAGEMENT ; DOUGLAS )<br>BURGUM, Secretary of the Interior, in his )<br>official capacity ; MATTHEW GIACONA, )<br>Acting Director, Bureau of Ocean Energy )<br>Management, in his official capacity ; )<br>KENNETH C. STEVENS, Principal Deputy )<br>Director, Bureau of Safety and Environmental )<br>Enforcement, in his official capacity, )<br>  )<br>    *Defendants*, )<br>  ) | Case No. 1:26-cv-10156 |

## DECLARATION OF MATTHEW GIACONA

I, Matthew Giacona, declare as follows:

1. I am the Principal Deputy Director of the Bureau of Ocean Energy Management ("BOEM") within the Department of the Interior ("Department"). I also have served in a temporary capacity as the Bureau's Acting Director since approximately July 2025. I have served as Principal Deputy Director since May 18, 2025. Prior to this role, I served as Senior Advisor to the Secretary of the Interior from March 24, 2025, to May 17, 2025.

2. As part of my responsibilities as the Principal Deputy Director of BOEM, I oversee BOEM's review, approval, regulation and oversight of offshore wind projects in federal waters on the U.S. outer continental shelf.

3. On behalf of the Department, in my role as Principal Deputy Director of BOEM, I have reviewed the documents described below.

4. In November 2025, the Department of War ("DoW") completed a separate assessment focusing on different national security concerns relating to or caused by offshore wind

projects, such as the Vineyard Wind 1 Project. This assessment was then provided to senior leadership at the Department of the Interior, including me, along with supporting classified information. This information included, among other things, discussion of the rapid evolution of relevant adversarial technologies and the direct impacts to national security that arise from the operation of offshore wind projects in proximity to early warning monitoring systems, and military and civilian radar systems.

5. DoW has designated the classified material with a secret designation.

6. I reviewed this classified material on November 26, 2025, and then again with senior Department leadership in early December 2025. Until my review, BOEM had not considered the specific national security risks posed by the Project that were set forth in the DOW classified material with a secret designation.

7. After my review of DOW's classified material with a secret designation, and review of the Project's current mitigations as they relate to ensuring the protection of national security interests, including the COP Approval and the 2022 Mitigation Agreement, **Exhibits A & B,** I determined that the Project's activities did not adequately provide for the protection of national security interests, as set forth in 43 U.S.C. § 1337(p)(4)(F), absent potential mitigation measures.

8. The Project is owned by Copenhagen Infrastructure (50%) and Avangrid Renewables, LLC (50%) (collectively, "Owners").

9. On December 22, 2025, based on the authority provided by 30 C.F.R. § 585.417(b), I issued a Director's Order to Rachel Pachter, Chief Development Officer, Vineyard Wind 1 LLC, suspending certain activities related to the Project for the following 90 days for reasons of national security. A true and correct copy of the Director's Order is attached as

**Exhibit C**. The Order informed Vineyard Wind 1 LLC about the DoW assessment and stated:

> Based on BOEM's initial review of this classified information, the particularized harm posed by this project can only be feasibly averted by suspension of on-lease activities. In coordination with DoW, BOEM will determine whether the national security threats relating to this project can be mitigated and invites you to meet and confer about that possibility. Given the construction status of this project, BOEM will consider all feasible mitigation measures before making a decision as to whether the project must be cancelled. . . .
>
> . . . In addition, given that this project is partially generating power, you may continue any activities from those wind turbines that are necessary for the current level of power generation.

10. Once BOEM appreciated the national security risk that the Project currently poses as it is operational, as set forth in the classified material with a secret designation, then the agency acted with urgency to mitigate further risks that will occur upon the completion of more turbines. Based on the classified material with secret designation, mitigation measures need to be in place for the Project as it is currently operational. Given the current status of the Project, BOEM decided to allow it to continue partially operating during the suspension period while it consulted with DoW and Owners. At this time, BOEM is not aware whether the national security risks can be mitigated and, if they can, whether Owners would find the proposed mitigation measures acceptable. Further, any potential mitigation measures may be more effectively incorporated into the Project before it is fully completed.

11. During the suspension, BOEM will consult with DoW on whether any potential measures exist to mitigate the national security risks posed by the Project. Given the foreign control over the Project, BOEM is coordinating with DoW on whether access to the classified material with a secret designation by Owners is possible and/or whether certain

information can be declassified or an unclassified summary could be created. Regardless of the 90-day time frame in the suspension letter, BOEM plans to review and analyze any mitigation measures proposed by DoW and/or Owners as expeditiously as possible.

12. BOEM has a mandate under the Outer Continental Shelf Lands Act to ensure that the Project provides for the national security needs of the United States. To date, BOEM is not aware of measures that would mitigate the national security risks of the Project. BOEM suspended further construction of the Project to prevent the currently present national security risks from increasing while allowing the parties to quickly determine whether mitigation measures are possible and feasible or whether cancellation is the preferred option. BOEM is concerned that allowing the Project to further increase its operational capacity without addressing the national security risks may cause Owners to ignore those risks since the Project is already supplying power to customers. However, BOEM cannot place more importance on the Owners' financial interests than it does on national security.

13. The information that I relied on to make the decision to send the suspension letter to Vineyard Wind 1 LLC regarding the Project is the classified material with secret designation received from DOW in November 2025. Further, the classified material with a secret designation that I relied upon for my decision is the information contained in DoW's classified declaration submitted in this matter.

14. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 20th day of January, 2026

                          *MATTHEW GIACONA* — Digitally signed by MATTHEW GIACONA, Date: 2026.01.20 12:53:31 -05'00'

                          Matthew Giacona
                          Principal Deputy Director
                          Bureau of Ocean Energy Management
                          Department of the Interior